UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


SAMANTHA NGUYEN ET AL.                    CIVIL ACTION


VERSUS                                    NO: 06-4130


ST. PAUL TRAVELERS INSURANCE              SECTION: "R"(1)
COMPANY


<u>**ORDER AND REASONS**</u>

Before the Court is Standard Fire Insurance Company's motion to dismiss plaintiffs' amended complaint and to strike the class allegations in *Samantha Nguyen et al. v. St. Paul Travelers Insurance Company*, Civ. A. No. 06-4130.  For the following reasons, the Court DENIES Standard Fire's motion to dismiss and GRANTS defendant's motion to strike the class allegations.


**I.    BACKGROUND**

On June 27, 2006, Samantha Nguyen and Linh Van Pham filed a petition for damages in state court against Standard Fire. Plaintiffs own property in Louisiana that was damaged as a result of Hurricanes Katrina and/or Rita.  They allege that defendant breached its insurance contract with plaintiffs by not including general contractor's overhead and profit costs when adjusting

plaintiffs' insurance claims.  Plaintiffs seek to bring their
action on behalf of themselves and a class of persons defined in
their petition. (R. Doc. 1-2.)

On September 25, 2007, Standard Fire filed a motion for
judgment on the pleadings and to strike the plaintiffs' class
allegations. (R. Doc. 194.)  Defendant argued that (1) plaintiffs
failed to state a claim for breach of contract; (2) plaintiffs
failed to state a claim for penalties and attorneys' fees; and
(3) plaintiffs' class allegations should be stricken.  On October
31, 2007, the Court heard oral argument on Standard Fire's motion
to dismiss and to strike the class allegations.  The Court then
issued an order granting Standard Fire's motion to dismiss, and
further granting plaintiffs leave to file an amended complaint.
(R. Doc. 290.)

On November 21, 2007, plaintiffs Samantha Nguyen and Linh
Van Pham filed an amended complaint.  Plaintiffs allege that on
August 29, 2005, they had in effect a Standard Fire insurance
policy covering damage to their property located at 7656
Expedition Drive, New Orleans, Louisiana. (R. Doc. 302 ¶ 3.)
Plaintiffs further allege that their insurance policy provides
that defendant "will pay the cost to repair or replace" property
damaged by a covered loss, including windstorm or hurricane. (*Id.*
¶¶ 6-7.)  The policy provides that defendant will pay "no more

2

than the actual cash value of the damage until actual repair or replacement is complete." (*Id.* ¶ 8.)  Finally, plaintiffs allege that in adjusting plaintiffs' loss, defendant determined that to repair the property damage would require the involvement of more than three trades, noting in a footnote that their estimate reflects that the work would require ten trades. (*Id.* ¶¶ 10; 11 n.1.)  Regardless, defendant did not include general contractor overhead and profit ("GCO&P") as part of its actual cash value payment to plaintiffs, which plaintiffs allege was a breach of the insurance contract. (*Id.* ¶¶ 10-11.)  Plaintiffs seek damages for defendant's breach of contract and bad faith in unreasonably failing to pay GCO&P as part of its actual cash value payment to plaintiffs, and for failing to inform plaintiffs of their right to GCO&P. (*Id.* ¶¶ 25-31.)

On December 18, 2007, Standard Fire moved to dismiss the amended complaints and to strike the class allegations. (R. Doc. 311.)  The Court heard oral argument on the motion on April 2, 2008.  Following oral argument the parties requested that the Court stay its ruling on Standard Fire's motion for ninety days. (R. Doc. 383.)  More than ninety days have passed, and the parties have advised the Court that they are ready for the Court to rule on the motion.

**II.   Analysis**

**A.   Motion to Dismiss**

   *1.   Legal Standard*

   In a motion for judgment on the pleadings pursuant to

Federal Rule of Civil Procedure 12(c), or in a motion to dismiss

for failure to state a claim under Rule 12(b)(6), the Court

requires "enough facts to state a claim to relief that is

plausible on its face." *Bell Atlantic Corp. v. Twombly*, --- U.S.

---, 127 S. Ct. 1955, 1974 (2007); *Johnson v. Johnson*, 385 F.3d

503, 529 (5th Cir. 2004) ("the standard for dismissal under Rule

12(c) is the same as that for dismissal ... under Rule

12(b)(6)").  "Factual allegations must be enough to raise a right

to relief above the speculative level, on the assumption that all

the allegations in the complaint are true (even if doubtful in

fact)." *Twombly*, 127 S. Ct. at 1965 (internal citations and

quotation marks omitted).

   Federal Rule of Civil Procedure 8 provides the general rules

of pleading.  Pursuant to Rule 8(a):

   A pleading that states a claim for relief must contain
   (1) a short and plain statement of the grounds for the
   court's jurisdiction ...; (2) a short and plain statement
   of the claim showing that the pleader is entitled to
   relief; and (3) a demand for the relief sought ...

Rule 8 requires that the pleading "give the defendant fair notice

of what the claim is and the grounds upon which it rests." *Dura*

4

*Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal quotation marks omitted).  Although a complaint need not contain "detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, it must show the that the pleader is entitled to relief and include more than mere "labels and conclusions." Fed. R. Civ. P. 8(a); *Twombly*, 127 S. Ct. at 1964-65; *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (quoting *Elliot v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)) ("In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations").

   *2.   Breach of Contract*

   Accepting all plaintiffs' well-pleaded facts as true, the Court finds that plaintiffs have stated a claim for breach of contract.  Under Louisiana law, an insurance policy, like other contracts, is the law between the parties. *Pareti v. Sentry Indem. Co.*, 536 So.2d 417, 420 (La. 1988).  If the policy wording is clear, and it expresses the intent of the parties, the agreement must be enforced as written. *Id*.  The policy must be construed as a whole, and one portion should not be construed separately at the expense of disregarding another. *Id*.  If an ambiguity exists, the ambiguity must be construed in favor of the party seeking coverage. *Id*.  The Court may not alter the terms of

5

the policy under the guise of contract interpretation when the language of the policy is unambiguous. *Id*.

Plaintiffs' insurance policy provides that Standard Fire "will pay no more than the actual cash value of the damage until actual repair or replacement is complete." (*See* Ins. Policy, R. Doc. 302-2 at 16 of 37.)[1]  Plaintiffs allege that they were entitled under the loss provision of their insurance policy to receive the actual cash value of their damaged property.  They further claim that when defendant settled with them on an actual cash value basis, it did not pay them the complete actual cash value, because defendant did not include GCO&P.  Accordingly, plaintiffs allege that defendant violated the terms of the insurance policy.

The plaintiffs are correct that pursuant to the terms of

_____

[1]  The Court will consider plaintiffs' insurance policy and defendant's estimate of the covered damage to plaintiffs' property without converting the motion to one for summary judgment because they are referred to and attached to plaintiffs' amended complaint. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). (*See also* Amend. Compl. Exs. A, B, R. Docs. 302-2, 303-3.)  The Court does not, however, consider the affidavits plaintiffs have attached to their opposition to the motion to dismiss. *See, e.g., Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) ("In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto").

their homeowner's policy, they are entitled to payment of the
actual cash value of their property before any repairs or
replacement take place, and regardless if such measures are never
taken.  The parties dispute how actual cash value is determined
in Louisiana, and whether plaintiffs' allegations that because
their repairs required three or more trades, they were entitled
to be paid GCO&P as part of the actual cash value.  The first
dispute concerns whether in Louisiana, actual cash value is
defined as replacement cost less depreciation, or is determined
by the "broad evidence rule."  After considering Fifth Circuit
cases and other cases in this Circuit, the Court finds that
actual cash value is replacement cost less depreciation. *See,
e.g., Real Asset Management, Inc. v. Lloyd's of London*, 61 F.3d
1223, 1228 n.7 (5th Cir. 1995) ("'Actual cash value' is defined
as the reproduction cost less depreciation."); *Rayabco Holdings,
LLC v. Markel Intern. Ins. Co.*, 2007 WL 2287833, *3 (E.D. La.
2007) ("It appears clear that the term's generally prevailing
meaning is replacement less depreciation."); *Delta Theaters, Inc.
v. Alliance General Ins. Co.*, 1997 WL 313413 (E.D. La. 1997); *see
also* BLACK'S LAW DICTIONARY (8th ed. 2004) (defining actual cash
value as "replacement cost minus normal depreciation").
Defendant relies on *Mamou Farm Services, Inc., v. Hudson
Insurance Company*, 488 So. 2d 259, 262-63 (La. App. 3d Cir.

1986), in support of its contention that actual cash value is determined according to the broad evidence rule.  In *Mamou*, the Louisiana Third Circuit Court of Appeal noted that actual cash value is based on "any evidence logically tending to the formation of a correct estimate of the value of the insured property at the time of the loss," including "the nature of the property insured, its condition, and other circumstances existing at the time of the loss." *Id.* at 262-63.  Nevertheless, the *Mamou* court did not look at any additional factors, but calculated the proper valuation of the property under the actual cash value provision as its replacement cost less depreciation. *See id.* at 263 (calculating actual cash value for the main building by determining that the replacement cost was $330,000, and then subtracting 11% depreciation).[2]

Replacement costs include the costs necessary to repair or replace the property.  Although there is no Louisiana law on the payment of GCO&P as part of an ACV payment,[3] numerous other

_____

[2] Defendant concedes in its brief, and further reiterated during oral argument, that "for purposes of analyzing whether overhead and profit should be included in an actual cash value payment, it should not matter whether the standard applied is the broad evidence rule or a replacement-cost-less-depreciation rule." (*See* R. Doc. 311-2 at 9 n.6.)

[3] *See, e.g., Edwards v. Allstate Prop. & Cas. Ins. Co.*, 2005 WL 221558, at *3 (E.D. La. 2005) (noting that there is "no Louisiana statute or case law which holds that a general

jurisdictions have held that an insurer is required to include
GCO&P in an ACV payment when it determines that an insured is
reasonably likely to require the services of a general contractor
to repair covered property damage. *See, e.g., Mills v. Foremost
Ins. Co.*, 511 F.3d 1300, 1305-06 (11th Cir. 2008) (holding that
"actual cash value" includes contractor's overhead and profit
charges if it is reasonably likely that insureds would incur such
charges);[4] *Parkway Associates, LLC v. Harleysville Mutual Ins.
Co.*, 129 Fed. Appx. 955, 963 (6th Cir. 2005) (holding that costs
of contractor's overhead and profit should be included in actual
cash value of loss when insured would reasonably be expected to
hire a contractor to repair its property).  This is true whether
the insured hires a general contractor, acts as his own general
contractor, or does not ever repair the property. *See Mee v.
Safeco Ins. Co. of America*, 908 A.2d 344 (Pa. Super. 2006) (an
insured is entitled to overhead and profit when use of a general
contractor would be reasonably likely, even if no contractor is
used or no repairs are made); *Mazzocki v. State Farm Fire & Cas.*

_____

contractor's profit and overhead costs are to be paid in the
Actual Cash Value payment.").

     [4] The Eleventh Circuit explained that in the same way that
if an insured has roof damage, she or he is entitled to the costs
to repair or replace the roof, if the services of a general
contractor are reasonably likely to be required for the repairs
at issue, GCO&P is required as part of an ACV payment.

*Corp.*, 1 A.D. 3d 9 (NY 2003) (holding that insurer is obliged to include overhead and profit in actual cash value payment whenever it is reasonably likely that a contractor would be needed to repair or replace the damaged property); *Ghoman v. New Hampshire Ins. Co.*, 159 F. Supp. 2d 928 (N.D. Tex. 2001) (holding that insured is entitled to GCO&P under an actual cash value policy, even if the insured is able to repair or replace the property for less money than paid by the insurer); *Salesin v. State Farm Fire & Cas. Co.*, 581 N.W. 2d 781 (Mich. App. 1998) (holding that insurers cannot deduct contractor's overhead and profit in paying actual cash value); *Gilderman v. State Farm Ins. Co.*, 649 A.2d 941, 945 (Pa. Super. 1994) (holding that repair or replacement costs "include any cost that an insured is reasonably likely to incur in repairing or replacing a covered loss ... includ[ing] use of a general contractor and his twenty percent overhead and profit.").  These cases hold that it is a breach of the insurance contract to fail to pay overhead and profit as part of an ACV or upfront RC payment when the insured is reasonably likely to require the services of a general contractor to repair covered property damage.

Plaintiffs nevertheless aver, citing industry standards and custom, as well as *Melot v. Oklahoma Farm Bureau Mut. Ins. Co.*,

87 P.3d 644 (Okla. Civ. App. Div. 4 2003),[5] that defendant is required as a matter of contract to include GCO&P in actual cash value payments whenever its estimate reflects that three or more trades are necessary to perform the insured's repairs. (*See* Amend. Compl. ¶ 10) ("It is both legally accepted, and the clear custom and practice in the insurance industry to include general contractor overhead and profit in the ACV or upfront payment as, 'a cost reasonably expected to be incurred' when defendant's adjustment of covered damages indicates the involvement of three or more trades necessary to perform repairs".)  The Court does not find that as a matter of Louisiana law, Standard Fire is required to include GCO&P as part of an ACV or upfront RC payment whenever it determines that three or more trades are needed to repair the insured's damaged property.  Plaintiffs have pointed to no such law in Louisiana supporting their "three or more trades rule," and the Court has found none.

Although plaintiffs allege that it is Standard Fire's custom and practice outside of Louisiana to pay GCO&P whenever it determines that three or more trades are necessary to repair the

---

[5] In *Melot,* the Oklahoma court affirmed certification of a class that presented the common question whether the insurer, in cases where it conceded that the insured's repairs involved three or more trades, was required to include an allowance for GCO&P in an ACV payment.

covered damage, plaintiffs do not provide any law explaining how Standard Fire's business practices must be read in as a term of the contract.  Plaintiffs do not contend that any term of the contract is ambiguous.  As noted above, the Court may not alter the terms of the policy under the guise of contract interpretation when the language of the policy is unambiguous. *Pareti*, 536 So.2d at 420; *see also Moran v. Prather*, 90 U.S. 492 (1874) (holding that custom or usage cannot be proved to explain terms or provisions in contracts or instruments when the meaning of such terms is unambiguous); *A. F. Pylant, Inc. v. Escambia Treating Co.*, 276 F.2d 919 (5th Cir. 1960) ("Evidence of customs and usages however cannot be used to vary the written terms of a contract."); 2 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 22:57 (3d ed. 2007) ("If the contract is stated in clear, positive, and unambiguous terms, usage or custom cannot be permitted to vary or contradict the terms used.").  Further, even if plaintiffs had alleged that the contract is ambiguous, it is generally accepted that a custom cannot vary the legal construction of a contract or the obligation arising out if it, unless the parties were presumed to contract in reference to the custom. *See, e.g., Ledoux v. Armor*, 4 Rob. 381 (La. 1843). Plaintiffs do not allege that they were privy to Standard Fire's business practices at the time they contracted with defendant.

Finally, plaintiffs have not alleged the type of facts necessary for Standard Fire's business practices to be considered as having the force of law. *See, e.g., Tyson v. Laidlaw*, 18 La. 380 (La. 1841) ("custom cannot be regarded as law until a long and uninterrupted prevalence is proved."); *Clark v. Gifford*, 7 La. 524 (La. 1835) (a usage or custom in the port of New Orleans, which had prevailed but five or six years among those having an interest in establishing it, was not of sufficient antiquity to constitute a valid custom). Further, it is interesting to note that plaintiffs in other putative overhead and profit class actions have advocated for different rules. *See, e.g., Jones v. Nat'l Sec. Fire & Cas. Co.*, 2006 WL 3228409, at *4 (W.D. La. 2006) (one-trade rule); *John v. Nat'l Sec. Fire & Cas Co.*, 2008 WL 394220, at *2 (W.D. La. 2008) (two-trade rule); *Mee*, 908 A.2d at 346 (one-trade rule). Accordingly, the Court does not read into defendant's contract a requirement that defendant pay general contractor overhead and profit whenever three trades are required for repairs.

Although the Court does not find that the "three-trade rule" applies as a matter of law in Louisiana, plaintiffs are entitled to introduce as evidence that because their covered damages

required three or more trades,[6] they were entitled to a payment
of GCO&P as part of their ACV payment because it was a cost
reasonably expected to be incurred in repairing or replacing the
covered loss.  Therefore the Court finds that plaintiffs' amended
complaint sufficiently alleges a claim for breach of contract.
Although plaintiffs have not alleged the *type* of damage to their
property, the Court finds that by alleging that three or more
trades were required to complete the repairs, plaintiffs have
sufficiently alleged facts that, if proven, could show that a
general contractor was reasonably likely to be needed to repair
their covered damage. *See Mee, supra* (considering the number of
trades needed to make repairs as one relevant factor in assessing
whether the services of a general contractor were reasonably
likely to be required).

        The Court previously held that plaintiffs had failed to
allege a breach of contract because plaintiffs did not allege any
contractual basis for defendant's duty to pay them overhead and
profit.  Specifically, the Court found that plaintiffs (1) did
not refer to any provision of their insurance policy that
entitled them to overhead and profit; (2) did not explain under

---

        [6] Plaintiffs allege in their amended complaint that
"defendant identified over **10 trades** involved in the repair of
covered damage to plaintiffs' property." (R. Doc. 302 ¶ 11 n.1)
(emphasis in original.)

what circumstances an insured is entitled to overhead and profit;
and (3) did not show that plaintiffs met such circumstances. *See,
e.g., Edwards v. Allstate Prop. & Cas. Ins. Co.*, 2005 WL 221558
(E.D. La. 2005) (dismissing plaintiff's claim that Allstate
under-adjusted her insurance claim by failing to compensate her
for contractors' overhead and profit when plaintiff did not
allege or identify any facts or circumstances that would
demonstrate the need for a general contractor's overhead and
profit costs).  In their amended complaint plaintiffs have
remedied these deficiencies.  They articulate that the policy
entitles them to the actual cash value of the property, which
includes costs to repair the covered damage, that Standard Fire
identified the covered damage as requiring three or more trades
to repair, and that plaintiffs would reasonably be expected to
need the services of a general contractor, but that they were not
paid GCO&P as part of their actual cash value payment.
Plaintiffs have alleged enough specific facts to state a claim to
relief for defendant's breach of contract that is plausible on
its face. *See Twombly*, 127 S. Ct. at 1974; *Guidry*, 954 F.2d at
281.

   *3.   Bad Faith*

   Defendant contends that plaintiffs' claim for damages and
attorneys' fees pursuant to Louisiana Revised Statutes 22:658

and/or 22:1220 must fail because "a plaintiff attempting to base her theory of recovery against an insurer on these statutes must first have a valid, underlying, substantive claim upon which insurance coverage is based."[7] *Clausen v. Fidelity and Deposit Co. of Maryland*, 660 So. 2d 83, 85 (La. App. 1995); *Phillips v. Patterson Ins. Co.*, 813 So. 2d 1191, 1195 (La. App. 2002). Because the Court has found that plaintiffs have stated a claim for breach of contract, the Court denies defendant's motion to dismiss the bad faith claims on this basis.

The Court nevertheless dismisses plaintiffs' claim for attorneys' fees without prejudice because plaintiffs cannot recover attorneys' fees under either La. Rev. Stat. §§ 22:1220 or the version of § 22:658 that applies to their claims. Section 22:1220 provides for penalties, but does not permit attorneys' fees. *See, e.g., Calogero v. Safeway Ins. Co. of Louisiana*, 753 So.2d 170, 174 (La. 2000). Plaintiffs are not entitled to attorneys' fees under section 22:658 either. The version of § 22:658 in place in the immediate aftermath of Hurricane Katrina did not provide for attorneys' fees. The Louisiana Legislature amended § 22:658 on June 30, 2006 to provide for "reasonable

---

[7]   Plaintiffs do not plead the statutory basis under which they seek relief, but defendant has assumed that plaintiffs seek penalties and attorneys' fees pursuant to La. Rev. Statutes §§ 22:658 and 22:1220. (R. Doc. 311-2 at 12.)

attorney fees and costs."  This amendment took effect August 15, 2006 and is not retroactive. *Sher v. Lafayette Ins. Co.,* – So. 2d –, 2008 WL 928486, *8, 11 (La. 2008).  Plaintiffs filed their complaint in state court on June 26, 2006, prior to the Louisiana Legislature's amendment of § 22:658.

Plaintiffs claim that they "cured this 'defect'" by filing an amended complaint after the Legislature's amendment to section 22:658.  They further aver that defendant's bad faith conduct is continuing and therefore they are not seeking retroactive application of the statute.  In *Sher v. Lafayette Ins. Co., supra*, the Supreme Court of Louisiana held that the plaintiff was not entitled to increased penalties pursuant to the 2006 amendments because his claim arose prior to the effective date of the amendment.  Although the Court held that "an insurer has a continuing duty of good faith and fair dealing which extends throughout the litigation period," it found that the plaintiff's claim "first arose" prior to the amendment of section 22:658 and therefore plaintiff was not entitled to increased penalties. *Id.* at *9.  Here, plaintiffs' alleged loss and Standard Fire's adjustment of that loss occurred before August 15, 2006. Accordingly, plaintiffs' cause of action for defendant's bad faith arose before the date of the amended legislation. Plaintiffs' amended complaint does not allege that they submitted

17

some "new" proof of loss to defendant after August 15, 2006 that defendant refused to pay and therefore does not allege a claim for defendant's breach of its duties of good faith and fair dealing that accrued after the amendments to section 22:658. Accordingly, the Court dismisses plaintiffs' claim for attorneys' fees.

**B.   Motion to Strike Class Allegations**

   *1.   Legal Standard*

   The Court has authority to strike class allegations on the face of the complaint "where a complaint fails to plead the minimum facts necessary to establish the existence of a class satisfying Rule 23's mandate." *See Aguilar v. Allstate Fire & Cas. Ins. Co.*, 2007 WL 734809, at *2 (E.D. La. 2007); FED. R. CIV. P. 23(d)(1)(D) ("the court may issue orders that ... require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly"); *cf. John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007).

   Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure.  To be certified, the class must first satisfy the following threshold requirements of Rule 23(a): (1) a class "so numerous that joinder of all members is impracticable"; (2) the existence of "questions of law or fact common to the

18

class"; (3) class representatives with claims or defenses "typical ... of the class"; and (4) class representatives that "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a).

In addition, the class must satisfy one of the three subsections of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Plaintiff seeks certification pursuant to Rule 23(b)(3). (Amend. Compl. ¶ 12.)  Rule 23(b)(3) imposes two prerequisites, predominance and superiority: "questions of law or fact common to class members [must] predominate over any questions affecting only individual members, and ... a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3); *see also Amchem Prods.*, 521 U.S. at 615; *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005).

    *2. Discussion*

    Plaintiffs propose the following class definition:

    All Louisiana residents:

    1.    who were issued an actual cash value or actual
          cash value with replacement cost endorsement
          insurance policy by Defendant,

    2.    whose policy was in full force and effect at the
          time of the covered event,

    3.    who made a claim for benefits to Defendant for
          benefits to address the physical loss to their

19

property which was damaged as a result of
Hurricane Katrina and/or Rita,

3.    whose adjustment prepared by Defendant, indicates
      the involvement of three or more trades necessary
      to perform covered repairs, and

4.    whose actual cash value (ACV) payment does not
      include general contractor's overhead and profit.

(Amend. Compl. ¶ 12.)

To be certified, a class must first satisfy the threshold
requirements of Rule 23(a), including numerosity, commonality,
typicality, and adequacy of representation, and then satisfy Rule
23(b)(3)'s two prerequisites of predominance and superiority.
Here, the parties mainly contest whether plaintiff can show that
questions of law or fact common to the class members predominate
over questions affecting only individual members.  Accordingly,
the Court addresses the issue of predominance first.

To predominate, "common issues must constitute a significant
part of the individual cases." *Mullen*, 186 F.3d at 626.  "This
requirement, although reminiscent of the commonality requirement
of Rule 23(a), is 'far more demanding' because it 'tests whether
proposed classes are sufficiently cohesive to warrant
adjudication by representation.'" *Unger*, 401 F.3d at 320 (quoting
*Amchem Prods.*, 521 U.S. at 623-24).  The Court finds that
individual issues predominate over questions of law or fact
common to the putative class, and therefore strikes plaintiffs'

20

class allegations.

As discussed above, plaintiffs allege that Standard Fire breached their insurance contract.  The substantive issues that will control the outcome of the case include the facts necessary to determine whether Standard Fire met its contractual obligations to plaintiffs, and therefore to the class. Plaintiffs' policy contains a Loss Settlement provision which provides in relevant part:

> We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete we will settle the loss according to the provisions of b.(1) and b.(2) above.

(Ins. Policy, R. Doc. 302-2 at 16 of 37.)  When an insured makes a claim on an actual cash value basis, defendant is required to include GCO&P in the ACV payment when the services of a general contractor are reasonably likely to be required. *See, e.g., Mills*, 511 F.3d at 1305-06; *Parkway Associates*, 129 Fed. Appx. at 963.

Plaintiffs allege that every time Standard Fire determines that an insured's damages require the services of three or more trades to repair, the insured is entitled to GCO&P, and therefore individual issues of law or fact do not predominate.  The Court finds that plaintiffs can allege that because an insured required the services of three or more trades, that is evidence that she

21

or he was reasonably likely to require the services of a general contractor, and therefore defendant's failure to include GCO&P in their adjustment was a breach of contract.  Although plaintiffs' proof might be simple and compelling, they fail to point out any law that would permit the Court to then foreclose the defendant from showing in an individual case that the insured was not reasonably likely to require the services of a general contractor, and therefore was not underpaid its ACV payment.

Whether the nature of an insured's damages indicates that he or she is reasonably likely to require the services of a general contractor is a factual question, requiring individualized assessments.  Accordingly, there is no "class-wide proof available" to decide whether the nature of each insured's damages were such that the insured was reasonably likely to require the services of a general contractor. *See, e.g., Gene And Gene LLC v. Biopay LLC*, — F.3d —, 2008 WL 3511766 (5th Cir. 2008).  Standard Fire proffers the following example.  In a case where the insured suffered roof damage during Hurricane Katrina, the damage might require roof repairs, repairs to ceiling panels, and repairs to carpet damage.  This indicates that three separate trades would be required, including a roofer, handyman, and carpet company. Standard Fire contends that an insured would not require a general contractor to coordinate this work.  On the other hand,

22

extensive damage to the roof of a large commercial building might
be the type of job that would require roofers alone, but would
still require the supervision of a general contractor because of
the complexity and scope of the work.  The determination of
whether the services of a general contractor would be reasonably
likely to be required in these two examples is a fact question,
that will be different for every insured.  This kind of case-by-
case determination is inappropriate for class treatment. *See John
v. Nat'l Sec. Fire & Cas. Co*., 2008 WL 394220 (W.D. La. 2008)
("This Court finds that a case by case factual inquiry would have
to be made regarding the type, nature and complexity of the
necessary repairs before it can be determined if a general
contractor is warranted.  Such an individualized inquiry would
necessarily prevent this type of claim from being certified as a
class."); *see also Mills*, 511 F.3d at 1306 (finding that
plaintiffs "would not be entitled to receive payment for any type
of cost charged by a general contractor without showing that they
would be reasonably likely to need a general contractor for the
repairs in issue."); *Mee*, 908 A.3d at 350 ("whether use of a
general contractor is reasonably likely depends on the nature and
extent of the damage and the number of trades needed to make
repairs.  This last principle necessarily requires consideration
of the degree of coordination or supervision of trades required

to make the repairs.").

Although plaintiffs have pointed out to the Court that a class action has been certified in a Louisiana state court on similar allegations as those before the Court, the Court does not find that this affects its ruling.[8] *See Press et al. v. Louisiana Citizens Fair Plan Property Ins. Corp.*, Civ. A. No. 2006-5530 (Civil District Court, Parish of Orleans) (Order certifying class, R. Doc. 396-4 at 4-9, Aug. 6, 2008). The certification order does not apply the standards under Fifth Circuit law for certification of a class, and does not address the issue of predominance at all.

---

[8] Judge Magee certified a class defined as "persons who had a Louisiana Citizens Property Insurance Corporation homeowners' insurance policy at the time of Hurricane Katrina and/or Hurricane Rita; and suffered covered damage to structures insured by that Louisiana Citizens Property Insurance Corporation homeowner's insurance policy as a result of Hurricane Katrina and/or Hurricane Rita; and the Louisiana Citizens Property Insurance Corporation's adjustment identifies three or more trades involved int eh repairs; and the payment was based on Louisiana Citizens Property Insurance Corporation's adjustment of damages; and the payment did not include 20% General Contractor Overhead and Profit. (*See* Order certifying class, R. Doc. 396-4 at 4-9, Aug. 6, 2008.)

24

**III. CONCLUSION**

For the foregoing reasons, the Court DENIES defendant's motion to dismiss plaintiffs' amended complaint and GRANTS defendant's motion to strike plaintiffs' class allegations.

New Orleans, Louisiana, this <u>6th</u> day of October, 2008.

<u>Sarah Vance</u>
SARAH S. VANCE
UNITED STATES DISTRICT COURT