UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


SAMANTHA NGUYEN AND LINH VAN              CIVIL ACTION
PHAM


VERSUS                                    NO: 06-4130


ST. PAUL TRAVELERS INSURANCE              SECTION: "R"(1)
COMPANY

This document pertains to Civil Action No. 06-5230, *Melancon v.
State Farm Insurance Company*.


<u>**ORDER AND REASONS**</u>

Before the Court is plaintiff Billy Melancon's motion for

class certification in his action alleging that defendant State

Farm Fire and Casualty Company underpaid general contractor's

overhead and profit when adjusting Hurricane Katrina and Rita

insurance claims.  For the following reasons, the Court DENIES

plaintiff's motion.


**I.    BACKGROUND**

On August 28, 2006, Billy Melancon sued State Farm. (R. Doc.

1, Civ. A. No. 06-5230.)[1]  He filed a supplemental and amending

_____

[1] Except where otherwise stated, all document numbers are
those referenced in the master case, *Nguyen et al v. St. Paul
Travelers Ins. Co. et al*, Civ. A. No. 06-4130.

complaint on May 11, 2007. (Amend. Compl., R. Doc. 136.)
Plaintiff alleges that he has a State Farm insurance policy on
his property located at 126 Satsuma Drive, Buras, Louisiana. (*Id.*
¶ 17.)  He alleges that his property was damaged during Hurricane
Katrina and/or Hurricane Rita, and that pursuant to his insurance
policy, State Farm owes him the value of his lost or damaged
property, including any accidental direct physical loss and
damage caused by windstorm or hurricane. (*Id.* ¶ 19-20.)

Plaintiff brings this action on behalf of himself and a
putative class of similarly situated State Farm insureds whose
homes suffered damage as a result of Hurricane Katrina and/or
Rita, and for whom State Farm determined that the nature of their
damages required the services of a general contractor.  In his
motion for class certification, plaintiff states that State Farm
paid him and all members of the putative class 10% general
contractor's overhead and 10% general contractor's profit as part
of an "upfront" adjustment of the insurance claim, either
pursuant to an actual cash value (ACV) policy or an ACV policy
with a replacement cost (RC) endorsement.  Plaintiff contends
that general contractor's overhead and profit (GCO&P) rose
dramatically in post-Katrina Louisiana, and therefore 20% was an
unreasonable and arbitrary figure "in light of the greatly
increased O&P figures ... actually faced by Melancon and the

putative class members." (Amend. Compl. ¶ 26.)  Plaintiff further alleges that State Farm's payment of 10% overhead and 10% profit, which was not the full amount of overhead and profit that the plaintiff was entitled to, was a breach of contract because State Farm had a "contractual obligation to pay actual cash value for the damaged or destroyed insured property." (*Id.* ¶¶ 24-25.)

Finally, plaintiff alleges that State Farm's failure "to take into consideration the actual contractor O&P post-Katrina and/or Rita" was arbitrary, capricious, and/or without probable cause. (*Id.* ¶ 31.)  Melancon claims that he and the putative members of the class are entitled to penalties, interest, attorneys' fees, and general and punitive damages pursuant to Louisiana Revised Statutes §§ 22:658 and/or 22:1220. (*Id.*)

On May 29, 2007, State Farm filed a motion to dismiss plaintiff's supplemental and amending complaint and to strike the class allegations. (R. Doc. 141.)  After consideration of the parties' briefs and oral argument, the Court denied the motion to dismiss and denied the motion to strike class allegations as premature. (R. Doc. 290.)  On December 3, 2007, plaintiff filed his motion for class certification.  The Court held a class certification hearing and rules on the motion as follows.

## II.   LEGAL STANDARD

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure.  To be certified, the class must first satisfy the following threshold requirements of Rule 23(a): (1) a class "so numerous that joinder of all members is impracticable"; (2) the existence of "questions of law or fact common to the class"; (3) class representatives with claims or defenses "typical ... of the class"; and (4) class representatives that "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a).

In addition, the class must satisfy one of the three subsections of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Plaintiff seeks certification pursuant to Rule 23(b)(3). (Pl.'s Mot. Class Cert., R. Doc. 308 at 14.) Rule 23(b)(3) imposes two prerequisites, predominance and superiority: "questions of law or fact common to class members [must] predominate over any questions affecting only individual members, and ... a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3); *see also Amchem Prods.*, 521 U.S. at 615; *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005).

4

As the party seeking class certification, plaintiff bears the burden of showing that all of the criteria are met. *See Unger*, 401 F.3d at 320.  Class certification is soundly within the district court's discretion, and the court "must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).  "Rule 23 requires the Court to 'find,' not merely assume the facts favoring class certification." *Unger*, 401 F.3d at 321. The class certification decision should not reach the merits of the plaintiffs' claims. *Castano*, 84 F.3d at 744.  However, in some cases it is necessary for a district court to go beyond the pleadings to understand the claims, defenses, substantive law, and relevant facts in order to make a meaningful certification decision. *Id; Robinson v. Texas Auto. Dealers Ass'n*, 387 F.3d 416, 421-22 (5th Cir. 2004).  Finally, "[i]t is an abuse of discretion to certify a class without adequately considering 'how a trial on the alleged causes of action would be tried.'" *Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 631 (5th Cir. 1999) (quoting *Castano,* 84 F.3d at 752).

## II.  DISCUSSION

### A.  Class Definition

Plaintiff proposes the following class definition:

5

All Louisiana property owners:

1.    Who were insureds under a homeowner insurance policy issued by State Farm Insurance Company as of August 29, 2005, and/or September 24, 2005;

2.    Who suffered a covered loss to their home in Louisiana as a result of Hurricane Katrina or Hurricane Rita;

3.    Whose policies were actual cash value (ACV) policies or actual cash value policies with replacement cost (RC) endorsements; and

4.    Whose ACV payment was based upon Defendant's own adjustment of damage and included general contractor's overhead and profit in an amount of 10% and 10% respectively.

(*See* Pl.'s Mot. Class Cert. 12). Plaintiff further proposes to exclude from the class the following persons:

1.    Persons who have been paid policy limits under coverages A and B.

2.    Persons who are individually named as plaintiffs in lawsuits against State Farm relating to their homeowner policy claims;

3.    Persons who have negotiated final settlements with State Farm and who have released all claims associated with Hurricane Katrina or Hurricane Rita relating to their homeowner policy claims while represented by legal counsel.

(*Id.* at 13). The Court finds that this class definition proposes an adequately defined and clearly ascertainable class.

**B.   Predominance**

To be certified, a class must first satisfy the threshold requirements of Rule 23(a), including numerosity, commonality,

6

typicality, and adequacy of representation, and then satisfy Rule 23(b)(3)'s two prerequisites of predominance and superiority. Here, the parties mainly contest whether plaintiff can show that questions of law or fact common to the class members predominate over questions affecting only individual members.[2]  Accordingly, the Court addresses the issue of predominance first.  Because the Court finds that plaintiff has not met his burden of showing that common questions predominate, which dooms class certification under Rule 23(b)(3), the Court does not address the other threshold requirements of Rule 23(a), or the superiority requirement of Rule 23(b)(3). *See, e.g., Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 601, 604 (5th Cir. 2006).

To predominate, "common issues must constitute a significant part of the individual cases." *Mullen*, 186 F.3d at 626.  "This requirement, although reminiscent of the commonality requirement of Rule 23(a), is 'far more demanding' because it 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Unger*, 401 F.3d at 320 (quoting *Amchem Prods.*, 521 U.S. at 623-24).  The Court finds that individual issues predominate over questions of law or fact

---

[2] State Farm also disputes that plaintiff has met his burden of showing the other requirements for class certification, except State Farm does not contest that plaintiff's putative class satisfies Rule 23(a)'s numerosity requirement.

7

common to the putative class.

The Court's determination of whether class certification is appropriate requires the Court to identify the substantive issues that will control the outcome of the case, assess which issues will predominate, and then determine whether the issues are common to the class. *O'Sullivan v. Countrywide Home Loans, Inc*., 319 F.3d 732, 738 (5th Cir. 2003).  Although the inquiry does not resolve the case on its merits, it requires that the Court look beyond the pleadings to "understand the claims, defenses, relevant facts and applicable substantive law." *Id.* (quoting *Castano*, 84 F.3d at 744); *see also Robinson*, 387 F.3d at 421 (analyzing plaintiff's horizontal price-fixing claim to determine whether facts necessary to sustain the claim predominated); *O'Sullivan*, 319 F.3d at 738 (noting that predominance is considered "in light of how liability is established under the relevant law.").  "Such an understanding prevents the class from degenerating into a series of individual trials." *O'Sullivan*, 319 F.3d at 738.

### 1.  *Plaintiff's Claims*

Here, plaintiff's underlying claim is for breach of contract. (See Order and Reasons, R. Doc. 290 at 8, Nov. 5, 2007) (finding that plaintiff had pleaded a breach of contract claim.) The substantive issues that will control the outcome of the case

include the facts necessary to determine whether State Farm met its loss settlement obligation to Melancon and therefore to the class.  Plaintiff's policy contains a Coverage A Loss Settlement Endorsement which provides in relevant part:

> We will pay up to the applicable limit of liability shown in the Declarations, the reasonable and necessary cost to repair or replace with similar construction and for the same use on the premises shown in the Declarations, the damaged part of the property.

(Melancon Policy, R. Doc. 309-3 at 57 of 62.)  State Farm is therefore contractually obliged to pay Melancon, after he suffers a covered loss, the "reasonable and necessary cost to repair or replace" his damaged property. (*See also* Lapinskie Test.*,* Class Cert. Tr. 55:17-19, Jan. 9-10, 2008) ("We would pay the reasonable and necessary cost to repair or replace with similar construction up to and including the policy limit.")  State Farm admits that although this is a replacement cost endorsement, this payment is made as an "upfront payment" based on its estimate of the "reasonable and necessary cost to repair or replace." (Def.'s Opp'n Class Cert. 4).[3]  State Farm uses the software Xactimate to generate these estimates.  The program has pricing data for identified unit repair costs.  State Farm applies GCO&P as a

---

[3] The difference between State Farm's payments pursuant to an RC endorsement compared with an ACV payment is that State Farm does not subtract depreciation from the upfront RC payment.

percentage of the total ACV estimate. (*See, e.g.*, Melancon Estimate, Pl.'s Ex. 26.)

State Farm includes GCO&P in its ACV or "upfront" RC payment if the claim representative determines that the services of a general contractor are reasonably likely to be required to effect the repairs. (Def.'s Opp'n Class Cert. 7; Lapinskie Dep. 24:18-25:19.); (*see also* Def.'s Class Cert. Hr'g Ex. 1) (Operations Guide providing "When it is reasonably likely that a covered repair will require the services of a general contractor to coordinate and supervise the repair, the general contractor's overhead and profit payment shall be paid with the ACV payment.") General contractor's overhead and profit is comprised of the general contractor's profit for the job, and his or her overhead, which reflects the costs of operating a business, including paying for rent, utilities, insurance and fuel. (Adrian Test., Tr. 184-85, 187) (*See also* Def.'s Class Cert. Hr'g Ex. 1) (State Farm Operations Guide describing overhead costs as "office space and materials, depreciation, utilities, property and liability insurance, telephone, office employee expenses, etc.") *See also* BLACK'S LAW DICTIONARY (8th ed. 2004) (defining overhead as "Business expenses (such as rent, utilities, or support-staff salaries) that cannot be allocated to a particular product or service; fixed or ordinary operating costs."). Plaintiff's major

contention is that State Farm included GCO&P after Hurricane Katrina at a rate of 10% overhead and 10% profit, which was allegedly below the market rate, particularly as compared to Allstate, which paid between 31% and 51% GCO&P after Hurricane Katrina. (*See, e.g.,* Amend. Compl. ¶ 28; Tr. 16:22-25.)

   2.   *Issues for Trial*

Plaintiff contends that he can show that State Farm breached its contract and did not pay him or putative members of the class the reasonable and necessary cost to repair or replace their property by accepting as accurate all decisions made and numbers used by State Farm in adjusting plaintiff's insurance claim, except for the percentage of GCO&P that State Farm applied to the final ACV calculation.  Plaintiff further avers this approach makes the question of whether 20% GCO&P was adequate post-Katrina the only issue for trial.

The Court finds that the issues at trial cannot be cabined so narrowly.  It is true that plaintiff has a simple trial plan.  He intends to stipulate that State Farm's estimate reflects the reasonable cost to repair or replace his property, except to challenge the percentage of GCO&P as insufficient, and he plans to call an expert to establish the proper percentage(s) of GCO&P, which he contends is greater than 20%.  That is not the end of the case, however, as failing to pay more than 20% GCO&P is not

*ipso facto* a breach of contract.  State Farm's insurance policy does not provide that it will pay to every insured the market rate for each item in need of repair.  The contract provides that State Farm will pay the insured the *total amount* that is reasonably necessary to repair or replace the property. Therefore for each class member, the issue is whether the total amount paid, not just a discrete, uniformly applicable component of that payment, was sufficient to satisfy State Farms's contractual obligation. *See, e.g., Maldonado v. Ochsner*, 493 F.3d 521, 524 (5th Cir. 2007) (holding that a determination of whether amounts patients were charged was "reasonable" was "necessarily an individual inquiry").

   3.   *State Farm's Defenses*

   State Farm would be entitled to demonstrate that its overall payment was reasonable, and its evidence would be based on an individualized assessment of the claims.  Plaintiff's effort to prove that State Farm breached its contract by not paying market rate GCO&P cannot foreclose State Farm from trying to show not only that the percentage of GCO&P it paid was reasonable,[4] but

---

[4] State Farm's expert, Edward VanHoven, provided in his expert report that he inspected plaintiff's residence and that "[a]pplying 10% of the job total for overhead and 10% of the job total for profit would be a fair and reasonable general contractor's fee."  He further stated that as a general contractor, he "would not hesitate to perform the repairs on the

also that as to each plaintiff, the overall amount paid was contractually sufficient, for any number of reasons, including that a general contractor was not reasonably likely to be required to make the repairs, State Farm's underlying ACV number was too high, or the amount included in the payment for GCO&P was sufficient because the Xactimate pricing data State Farm used for unit repair costs included in the estimate was above market rate or because contractors would do the work for the amount included. State Farm is entitled to show that its overall adjustment of each putative class member's claim satisfied its contractual obligation to pay that insured the reasonable and necessary costs to repair or replace his or her damaged property.

At the class certification hearing, State Farm introduced sufficient evidence to indicate that, as to some members of the class, it would have a basis to challenge whether a general contractor was necessary in the first place.  Plaintiff's class definition assumes that in all cases in which State Farm included GCO&P, the services of a general contractor were reasonably likely to be required. (*See* Pl.'s Mot. Class Cert. 25) ("Plaintiff does not intend to litigate the issue of whether class members reasonably needed general contractors. ...

---

Melancon residence for the same amounts." (VanHoven Report, R. Doc. 309-16 at 2 of 7.)

Plaintiff does not challenge State Farm's own determinations that the class members are entitled to GCO&P.")  State Farm now avers that it paid for GCO&P in some cases where a general contractor was not required to effect the repairs. (*See* Def.'s Opp'n Class Cert. 27; Adrian Report, R. Doc. 309-9 at ¶ 7.A.)  For example, State Farm's expert, Dr. Adrian, reported that he reviewed 412 State Farm claim files, and that in 25% of the cases, State Farm had paid GCO&P when it was unnecessary to do so. (Adrian Report ¶ 7.A.) ("My analysis of the State Farm 412 claim files, indicates a subset of ninety (90) claim files where State Farm paid general contractor overhead and profit even though the services of a general contractor would not be warranted.")[5]

If it is true that State Farm paid GCO&P for some putative class members when the nature of the individual's damages did not require the services of a general contractor, the individual would not have suffered any damages from an alleged *under*payment of GCO&P.[6] *See Foreman v. Jordan*, 131 So. 2d 796, 803 (La. App.

---

[5] In his report Dr. Adrian additionally stated that for 112 of the 412 claims he reviewed, he could not determine from the claim file whether a general contractor would be necessary. (Adrian Report ¶ 7.A.2.)

[6] This does not mean that State Farm will "clawback" the payment or seek a refund, as plaintiff has suggested.  Whether some individuals were paid GCO&P when the nature of their repairs did not reasonably require the services of a general contractor is relevant, however, in determining whether State Farm breached

3d Cir. 1961) ("It is elementary that no recovery may be had for breach of contract until damages have been proved."). Dr. Adrian further opined that determining whether GCO&P should be paid on any given claim always requires an individualized assessment, based on factors such as the dollar value of the work, the difficulty of the repair and construction work required, and the type and number of labor trades or crafts required to do the work. (Adrian Report ¶¶ 5.A.3, 5.B.; *see also* Lapinskie Test., Tr. 60:1-10.)[7] State Farm would be entitled to challenge by an individualized assessment whether the class member needed the services of a general contractor in the first place. Even though a jury might not find such evidence credible in light of the fact that State Farm paid for a general contractor, the Court cannot find a legal basis to stop State Farm from submitting proof on this issue.

Although plaintiff asserts that State Farm can identify claims when GCO&P was allegedly not owed, and those insureds

its contractual obligations.

[7] Dr. Adrian also avers that there is no single percentage of overhead and profit, but that it varies by the job, by the general contracting firm, and by other factors, such as whether the general contractor will self-perform work on the project, or work exclusively in a supervisory capacity. (Adrian Test., Tr. 149) ("General contractor overhead and profit is job unique and company unique.")

could be removed from the class, plaintiff does not elaborate on whether he will accept State Farm's determinations, how this decision-making process will fit into the class and/or trial procedure, or how this will alter the class definition.  At this point, plaintiff has not proposed a trial plan that will protect State Farm's right to challenge the necessity of paying GCO&P in the first place to some members of the class, without allowing the trial to degenerate into numerous individual trials. *See Mullen*, 186 F.3d at 631 (district court cannot certify a class without adequately considering how a trial on the alleged causes of action would be tried); *O'Sullivan*, 319 F.3d at 738.

       *4.   Amount of GCO&P vs. Percentage of GCO&P*

       Defendant introduced evidence at the class certification hearing that the reasonableness *vel non* of its adjustment cannot be determined by simply looking at the percentage of GCO&P paid. For example, plaintiff contends that evidence that Allstate was paying at least 31% GCO&P on its estimates is evidence that State Farm was clearly underpaying its insureds when it adjusted their claims. (*See, e.g.,* Amend. Compl. ¶ 28.)  An analysis of the percentage of GCO&P included in an estimate compared to the percentage of GCO&P paid by another insurer does not provide a sufficient basis to determine whether the amount of GCO&P paid for each job was reasonable, much less to determine whether the

16

overall payment was contractually insufficient.  This follows because not all insurers' estimates include the same prices for other components of the estimate.  Edward VanHoven, one of State Farm's experts, compared State Farm and Allstate estimates made within 30-40 days of each other for the replacement of 30-year shingles with a steep roof allowance.  He found that State Farm's underlying unit price yielded a greater amount of GCO&P, even though the 20% GCO&P State Farm used was lower than the 51% GCO&P used by Allstate. (VanHoven Report, R. Doc. 309-16 at 3 of 7; VanHoven Test., Tr. 122, 124.)  Thus, because GCO&P is calculated as a percentage of the final ACV payment, GCO&P cannot be easily divorced from all of the defendant's other decisions with respect to an insured's claim.  State Farm would be entitled to introduce evidence that its estimate generated a sufficient amount of money, including the amount of GCO&P, to permit the insured to have the property repaired or replaced with the services of a general contractor.    Defendant also introduced evidence at the class certification hearing that not all State Farm insureds are similarly situated with respect to the amount of GCO&P State Farm paid for similar types of repair/replacement claims. Defendant pointed out that some insureds had general contractors involved in the claims adjustment process.  Defendant suggests that at least for some of the claimants, there was a market

17

participant involved, who was willing to accept the payment as a
reasonable amount to repair or replace the property.  Plaintiff's
response to this suggestion is that all insureds who, through a
"reconciliation" process, negotiated their payment with State
Farm and worked out a compromise, or had a general contractor
involved in the adjustment on their behalf, should be excluded
from the class. (*See, e.g.,* Class Cert. Tr. at 75-77, 244:13-14.)
Putting aside the problem of determining whether that exclusion
would mean that the class is not presently ascertainable, that
some claimants had general contractors involved in the adjustment
process further shows that putative class members' claims are not
sufficiently similar for common issues to predominate.

    Evidence of the amount of GCO&P included in upfront payments
would be relevant to the trier of fact in determining whether
that amount was commensurate with what general contractors were
willing to accept for similar jobs.  State Farm is entitled to
present evidence that for each insured, whether the amount of
GCO&P include in his or her adjustment reflected market rates
depends on whether the percentage that was applied to the
specific components of the estimate, at the time and place where
the work would be performed, was sufficient to attract a general
contractor to do the work. *See, e.g., Jones*, 2006 WL 3228409, *4
(W.D. La. 2006) (dismissing plaintiff's class claims for damages

18

for under-adjustment of unit prices after Hurricanes Katrina and Rita because "a factual inquiry would have to be made into each putative class member's claims, such as where and when materials and supplies were being purchased, what was the market price at the time, and when did the price of materials and supplies decrease."). Further, at the class certification hearing State Farm introduced evidence that after Hurricane Katrina, it took account of changes in labor and material costs quarterly and that these costs varied from region to region around the state. (*See, e.g.,* Lapinskie Test., Tr. 70; Def.'s Class Cert. Hr'g Exs. 16, 22.)

Plaintiff has not cited any case law that persuades the Court that failure to pay "market rate" GCO&P is *per se* a breach of the insurance contract whenever the insurer pays some GCO&P as part of an ACV or RC payment, so that individual issues of fact would not predominate.[8] In *Burgess v. Farmers Ins. Co., Inc.*, 151 P.3d 92 (Okla. 2006), although the Supreme Court of Oklahoma certified an overhead and profit class action, the class addressed only the question of whether GCO&P was recoverable at all given a fixed set of circumstances, not the percentage of

---

[8] Nor has plaintiff pointed to any case where a class action has been certified or tried on the issue of the sufficiency of the percentage of overhead and profit.

GCO&P that should be paid. *See also Melot v. Oklahoma Farm Bureau Mut. Ins. Co.*, 87 P.3d 644 (Okla. Civ. App. 2003); *Press et al. v. Louisiana Citizens Fair Plan Property Ins. Corp.*, Civ. A. No. 2006-5530 (Civil District Court, Parish of Orleans) (Order certifying class, R. Doc. 396-4 at 4-9, Aug. 6, 2008).  Here, plaintiff is not challenging the failure to pay GCO&P at all, but that the 20% GCO&P paid by State Farm was unreasonable in light of market conditions after Hurricanes Katrina and Rita.  Further, plaintiff has provided the Court with no law showing that State Farm is bound to its pre-litigation estimate, except for the percentage of GCO&P, and foreclosed from attempting to show that the amount it paid each insured was reasonable.[9]  Insurers develop estimates to reflect a *total* number that is supposed to represent the reasonable cost to repair or replaced the insured's

_____

[9] The only legal argument plaintiff has made that State Farm is estopped from showing that the total amount paid was reasonable is its reference to case law providing that an insurer cannot recover payments made to its insureds. *See State Farm Mut. Auto. Ins. Co. v. Azhar*, 620 So.2d 1158 (La. 1993).  In *Azhar*, State Farm sued to recover $35,000.00 it had unconditionally tendered to its underinsured motorist after a jury fixed the insured's total damages at $28,000, reduced by 50% comparative fault to $14,300.  The Court held that State Farm could not recover its unconditional payment to its insured "absent some fraud or ill practices." *Id.* at 1160.  Here, State Farm does not seek to recover from its insureds amounts it already paid to them.  Rather, in response to a lawsuit by the insured for additional payment, it seeks to introduce evidence that the amount it already paid its insureds was reasonable, and therefore not a breach of the insurance contract.

damaged property.  State Farm is entitled to show that it
fulfilled its contractual obligation to each insured.  It is
possible that some putative class members were underpaid, and
some were overpaid, but a trial on the merits of Melancon's class
claim should not resolve that issue as to all putative members of
the class.  In the end, plaintiff's breach of contract claim is
an adjustment dispute that is inappropriate for class
certification.[10]

_____

[10] This Court is not alone in determining that post-
hurricane adjustment claims are not appropriate for class
treatment because of the highly individualized facts of each
claim. *See Jones v. Nat'l Sec. Fire & Cas. Co.*, 2006 WL 3228409
(granting motion to dismiss class allegations concerning
deficiencies in the payment of overhead and profit on Hurricane
Rita claims), *aff'd, John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d
443 (5th Cir. 2007); *Aguilar v. Allstate Fire & Cas. Ins. Co.*,
2007 WL 734809, *1, 3 (E.D. La. 2007) (granting motion to strike
class allegations in Hurricane Katrina case alleging "below
market unit pricing and nonpayment or intentional underpayment of
industry standard items" holding that these allegations would
"require an intensive review of the individual facts of each
class member's damage claim"); *Spiers v. Liberty Mut. Fire Ins.*
Co., 2006 WL 4764430, *2 (E.D. La. 2006) (striking class
allegations in Hurricane Katrina case alleging a pattern and
practice of bad faith and improper claims handling because
"individual questions pertaining to each class member overwhelm
any arguably common issues"); *Guice v. State Farm Fire & Cas.*
Co., 2006 WL 2359474 (S.D. Miss. 2006) (denying class
certification with respect to "slab cases" in Mississippi because
the resolution of those cases would depend on the facts of each
individual loss and certification would be "inconsistent with the
requirements of due process"); *Henry v. Allstate Ins. Co.*, 2007
WL 2287817, *4 (E.D. La. 2007) (striking class allegations that
Allstate used a program to produce artificially depressed claim
values with the intent to underpay their insureds' claims because
"proving a questionable pattern and practice of undervaluing

The predominance issue here cannot survive the rigorous scrutiny the Fifth Circuit uses in certification cases.  For example, the Fifth Circuit has held that where the "reasonableness" of estimated costs are at issue, individual determinations overwhelm any common issues.  In *Robinson v. Texas Automobile Dealers Association*, consumers brought suit against an automobile dealers' association and dealerships, alleging that by charging vehicle inventory tax (VIT) as a separate item on each sales contract, dealers engaged in horizontal price-fixing, conspired to create a horizontal price-fixing regime, and were unjustly enriched. 387 F.3d at 420.  The Fifth Circuit held that the district court had erroneously certified a class of persons who purchased a vehicle in Texas from a motor vehicle dealership and who were charged VIT in addition to the sales price of the vehicle, because facts necessary to sustain a possible horizontal price-fixing injury did not predominate. *Id.*

The *Robinson* plaintiffs sought to accept that the price they paid for the vehicle was accurate and just challenge the VIT number put on top of the price as artificially increasing the

---

claims will require an intensive review of the individual facts of each class member's damage claim"); *see also Comer v. Nationwide Mut. Ins. Co.*, 2006 WL 1066645 (S.D. Miss. 2006); *Caruso v. Allstate Ins. Co.*, 2007 WL 2265100 (E.D. La. 2007) (granting motion to strike class allegations in Hurricane Katrina case involving Valued Policy Law claims).

final purchase price for every consumer in the class.  The Fifth
Circuit found that the VIT was not just an additional charge
always added to the purchase price, but in some cases it was part
of the total price that had been negotiated.  The assumption that
the addition of VIT always inflated the price ignored the real-
world reality that "[b]ottom-line purchasers base their
negotiations on the *final* purchase price, including every tax,
fee, and surcharge." *Id.* at 423.  Therefore the Court found that
whether a buyer had been injured needed to be determined on a
case-by-case basis: "[t]o determine whether a purchaser
negotiated in a top-line or bottom-line fashion, a court would
have to hear evidence regarding *each purported class member and
his transaction*.  Such an individual examination would destroy
any alleged predominance present in the proposed class." *Id.* at
424.

Similarly, in *Maldonado*, the Fifth Circuit found that the
reasonableness of a charge had to be determined on an individual
basis.  The plaintiffs in *Maldonado* sued Ochsner Clinic
Foundation, alleging that Ochsner charged uninsured patients
undiscounted rates for their medical services, but offered
discounts to patients who were health plan members, or covered by
private insurance, Medicare, and Medicaid.  The plaintiffs'
causes of action included breach of contract and third party

23

breach of contract.  The Fifth Circuit affirmed the district court's denial of class certification after determining that the reasonableness of medical fees depended on multiple factors, in which individual issues would overwhelm common issues. *Maldonado*, 493 F.3d at 525-26.  Both the district court and appellate court noted that one set of operative facts did not establish a defendant's liability.

In the final analysis, whether the amount State Farm paid an insured was the "reasonable" and "necessary" cost to repair or replace his property may depend on the specific damage to the insured's property, the nature of the repairs and materials required to repair or replace that damage, whether the insured was reasonably likely to require the services of a general contractor, and if so, whether there was an underpayment of GCO&P that caused the total payment to be too low, and if so, by how much.  Even if plaintiffs could point to State Farm's estimate and call an expert to opine that GCO&P post-Katrina was more than 20%, State Farm would be entitled to point to case-specific facts reflecting whether or not the bottom-line dollar amount State Farm paid each insured was sufficient.[11]

---

[11] Plaintiff's complaint also alleges that State Farm acted in bad faith and is responsible for its alleged failure to investigate.  The Court finds that the analysis of the breach of contract claim alone is sufficient to show that questions common

**III. CONCLUSION**

      For the foregoing reasons, the Court finds that plaintiff has not met his burden of showing that the criteria for class certification are met and that his breach of contract claim for failure to pay market rate GCO&P is suitable for class treatment. Accordingly, plaintiff's motion for class certification is DENIED.

      New Orleans, Louisiana, this 22nd day of August, 2008.

_____
SARAH S. VANCE
UNITED STATES DISTRICT COURT

---

to the class members do not predominate over questions affecting only individual members. *See also Robinson*, 387 F.3d at 422 ("Plaintiffs assert three separate claims, but we need consider only whether they have defined a class whose members suffered an antitrust injury.").